UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:24-CR-79-KAC-JEM |
|  | ) |  |
| MICHAEL ALEXANDER MAHONE, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM AND ORDER**

This case is before the undersigned on the United States Probation Office's Petition for Action on Conditions of Pretrial Release [Doc. 34] and the Government's Motion to Revoke Bond [Doc. 41]. *See* 28 U.S.C. § 636(b).

**I.   BACKGROUND**

The Indictment charges Defendant with conspiring to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); conspiring to distribute four hundred grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); aiding and abetting the possession with the intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2; aiding and abetting the possession with the intent to distribute four hundred grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2; and aiding and abetting the possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), (2) [Doc. 13].

Defendant appeared for arraignment on an Indictment on July 24, 2024 [Doc. 15]. The Government moved that he be detained pending trial [*Id.*]. Defendant waived and reserved the

right to a detention hearing [Doc. 19]; the Court ordered that he be detained [Doc. 22]. Defendant subsequently asked the Court to release him on certain conditions [Doc. 24]. On September 5, 2024, following a hearing, the Court ordered Defendant released on conditions, including that Defendant not violate federal, state, or local law, nor use alcohol excessively and report any change of residence to a pretrial services officer [Doc. 30]. The conditions placed Defendant into the custody of his sister, Jasmine Mahone, and his fiancé,[1] Shanae Neely, and restricted him to his residence except for approved activities [*Id.*].

On November 20, 2024, the undersigned issued an arrest warrant for Defendant based on a Petition for Action on Conditions of Pretrial Release submitted by United States Probation Officer ("USPO") Shauna McCullough-Walker, Defendant's supervising officer in this district [Doc. 34]. In the petition, Officer McCullough-Walker presents that on November 18, 2024, Ms. Neely called Defendant's supervising officer [*Id.* at 2]. Ms. Neely alleged that Defendant had not been abiding by home detention and physically assaulted her in a hotel room [*Id.*]. The petition transcribes a police report, described in further detail below [*Id.*].

Defendant was arrested in Michigan and had an initial appearance in the Eastern District of Michigan [Doc. 35]. Following a hearing under Rule 40 of the Federal Rules of Criminal Procedure on November 25, 2024, Magistrate Judge Anthony P. Patti ordered that Defendant's bond be suspended pending a hearing in the Eastern District of Tennessee [*Id.*].

Defendant appeared in the Eastern District of Tennessee on December 17, 2024 [Doc. 38]. The Government orally moved for revocation of Defendant's release on conditions and detention of Defendant, and Defendant requested a hearing [*Id.*]. Thereafter, on December 19, 2024, the

---

[1] The Petition and the Government's Motion refer to Ms. Neely as Defendant's girlfriend. She testified that she and Defendant are engaged.

Government filed a Motion to Revoke Bond [Doc. 41]. The Government asks the Court to place Defendant in custody, arguing that he violated Michigan state law and the conditions of release by spending the night at a motel, drinking a pint of alcohol, and assaulting Ms. Neely [*Id.*].

## II. REVOCATION HEARING

The parties appeared before the undersigned on January 24, 2025, for a revocation hearing.[2] Assistant United States Attorney ("AUSA") Caroline Poore appeared on behalf of the Government. Attorney Ashlee Mathis appeared on behalf of Defendant, who was also present.

Without objection, AUSA Poore introduced the police report and the accompanying body camera footage, written victim statement, and photographs [Exhs. 1–14]. According to this evidence, at 9:30 a.m. on November 15, 2024, Ms. Neely went to the Harper Woods Police Department. She reported that she and Defendant spent the previous night at the Pine Crest Inn and Defendant assaulted her [Exh. 3]. She provided a victim statement chronicling the events [Exh. 4]. She described while alone at the motel, he went through her phone and became upset [*Id.*]. She wrote that he drank a bottle of liquor and was "punch[ing her] in [the] face . . . bit[ing her] on [the] arm . . . [and used] the [H]ennessy bottle [to] beat [her]" [*Id.*]. In the recorded statement, she told the police officer that Defendant is "abusive overall" and that in March of 2023, she was hospitalized and filed a police report but did not pursue the charges [Exhs. 1, 2]. The officer photographed her back, face, and arms [Exhs. 2; 5–14]. He observed redness and bruising on her back as well as swelling on her face [Exhs. 2, 3]. Ms. Neely's mother joined her and told the officer that Defendant has done this in the past and "is very abusive" [Exh. 2].

---

[2] The Court originally scheduled a hearing for December 20, 2024. On December 19, 2024, Defendant asked the Court to allow his witnesses to testify remotely, or, alternatively, to continue the hearing [Doc. 40 p. 1]. The Court continued the hearing to allow time for defense witnesses to be present and reset the hearing to January 10, 2025 [Doc. 43]. Due to inclement weather, the Court subsequently continued the hearing to January 24, 2025.

Attorney Mathis called Ms. Neely to testify. Attorney Mathis asked whether Ms. Neely stayed at a hotel with Defendant on November 14, 2024, and whether he assaulted her that night. Ms. Neely answered "no" to each question. Regarding the police report and the marks on her body, she explained that she got into an altercation with a family member. She stated that later that day, she went to Jasmine Mahone's house and, upon reading through Defendant's phone, found out that he was having an affair. The next morning, she explained, she and her mother went to the police station.

Ms. Neely stated that she requested that the police drop the charges against Defendant about two days later and told them that her allegations were false. She confirmed that she contacted the office of Attorney Mathis, requested to testify, and offered a written statement in December 2024. Attorney Mathis introduced this statement against no objection [Exh. 15]. Ms. Neely confirmed the veracity of her statement, which describes that she "caught [him] having an affair [and he] never put his hands on [her]. [Ms. Neely] got into a family altercation, which led to those marks . . ." [*Id.*].

Ms. Neely testified that while on release, she has not seen Defendant outside Ms. Mahone's residence; he has attended his GED program; and he has refrained from smoking or drinking. She reiterated that there was nothing true about her prior statement to police, rather, she was hurt and wanted to hurt him back.

On cross-examination, Ms. Neely offered more detail about the family altercation. She estimated that the altercation occurred at around 6:00 p.m. at her mother's house. She explained that she and her sister (who do not get along) were sitting on the couch discussing "family things," like how she treats her nieces and nephews or how her sister "feel[s] like she know[s] what [is] best." As the conversation grew louder, they stood up and were punching, biting, and kicking for one or two minutes. After her sister left, Ms. Neely texted her mom and went to Ms. Mahone's

home, where she arrived around 7:00 p.m. She testified that five people live at her mother's house (her two parents and three siblings) but during the altercation, she and her sister were alone.

Regarding the footage of her mother reporting to the police that Defendant was abusive, Ms. Neely explained that her mother was not truthful. Ms. Neely stated that she lied to the police when she said that the marks were from Defendant and that she had been hospitalized in March of 2023. Ms. Neely reiterated that she made up her statements to police to "get back" at Defendant.

Next, Attorney Mathis called Jasmine Mahone to testify. She confirmed that Defendant has resided in her home since September 5, 2024. Ms. Mahone stated she works remotely: on a typical morning, at 4:00 a.m., she wakes up to get her children ready for school, and at 6:45 a.m., Defendant warms up her car. She recalled that on November 15, 2024, he told her that a tire was flat. She detailed that around 9 a.m., after obtaining permission from his pretrial services officer, Defendant accompanied her to get her tire fixed. Attorney Mathis introduced photos dated November 15, 2024; Attorney Poore did not object [Exh. 16]. Ms. Mahone stated that the photos portrayed her tire and car being fixed.

Ms. Mahone explained that Defendant resides in the upstairs of her home, alongside her children. She stated that guests frequently visit her, her children, and Defendant. Ms. Mahone described that she has cameras with audio and video throughout her home, including the upstairs. The cameras notify her when anyone comes or goes. As she works from home, she continues to pay attention to Defendant and check any camera notifications.

Ms. Mahone stated that she had no reason to believe Defendant stayed at a hotel on November 14, 2024. She explained that if Defendant had left, the cameras would have notified her; the alarms on her doors would have sounded. She testified that had no footage from the cameras because the software regularly erases the material. Ms. Mahone added that if Defendant had been absent, she would have noticed because she "fusses at him" if he does not help with her

children. She recalled that Defendant was present that evening: they made nachos, Ms. Neely visited, and Ms. Mahone went to sleep around 2:00 or 3:00 a.m.

Ms. Mahone testified that she has never seen Defendant assault, push, or put hands on Ms. Neely. She recalled that she and Defendant had discussed removing Ms. Neely as a third-party custodian because "this relationship [did not] need to be conflicted with this case." She stated that she has not seen Defendant use illegal drugs or alcohol; that his pretrial services officer has visited frequently; and that Defendant has been doing well in his GED program. Ms. Mathis introduced (with no objection) a letter from Defendant's instructor, which highlights that he "has been very active in the classroom . . . and has already shown grade improvement" [Exh. 17]. Ms. Mahone confirmed that she remains willing to serve as Defendant's third-party custodian.

Finally, Attorney Mathis called Delicia Mahone to testify. She is Defendant's mother and lives ten to twenty minutes away from her daughter Jasmine. She works from 2:00 p.m. to 10:30 p.m. from Sunday to Thursday. She confirmed that is willing to be Defendant's third-party custodian, drive him to court dates, and ensure he abides by conditions.

The Court called Officer McCullough-Walker. She reported that Defendant's supervising officer in Michigan had not reported any noncompliance. She stated that in early November, the officer informed her that Defendant asked to change residences and live with his father. Officer McCullough-Walker was aware of only one issue, which was when Defendant did not answer a videocall from his supervising officer. Defendant answered a phone call and informed his officer he was heading to the grocery store, having understood that he had permission to do so. The officer informed Defendant he would need to seek permission each time. Officer McCullough-Walker testified that she had not heard that Defendant had tested positive on any drug screens. She explained that he was taken into custody on the Petition when he reported to his supervising officer in Michigan.

### III. POSITIONS OF THE PARTIES

The Government argues that probable cause exists to believe that Defendant committed domestic assault [Doc. 41 p. 1]. The Government asserts that Defendant further violated the conditions of his release by drinking alcohol excessively and not staying at his residence as required [*Id.* at 3]. At the hearing, AUSA Poore stated that individuals affected by domestic violence commonly recant allegations. She highlighted the detail, emotion, and temporal proximity of Ms. Neely's statements to the police. Further, she argued, the photos of Ms. Neely's injuries and footage of her mother's commentary corroborate her account of Defendant's violence. AUSA Poore asserted that Ms. Neely wants to protect Defendant and, at the hearing, Ms. Neely offered vague testimony, inconsistent with the injuries pictured and unsupported by other evidence. AUSA Poore argued that no conditions can assure the safety of Ms. Neely and the community. She stated that Defendant is violent and has a tumultuous relationship with Ms. Neely. She pointed out that that guests frequent Ms. Mahone's residence and he was sitting outside the home in a car.

Attorney Mathis responded, arguing that the Government has established neither probable cause to believe that Defendant committed a crime while on release nor clear and convincing evidence that he violated the conditions of release. She argued that Ms. Neely's statements to the police were not credible, noting that Ms. Neely provided the statement to police in an informal setting and was not under oath. Attorney Mathis called the Court's attention to the officer's opinion that Ms. Neely's injuries looked old. Attorney Mathis emphasized that Ms. Neely voluntarily testified at the hearing, stated that she understands filing a false police report is a crime, and maintains that Defendant did not assault her. Additionally, Attorney Mathis asserted that other evidence negated the police report, namely, that Ms. Neely explained that she had been in an altercation with her sister and that she reported Defendant to the police because she was hurt by Defendant's infidelity. Attorney Mathis proffered that a few weeks before Ms. Neely filed the

7

police report, Defendant called to inquire about removing her as a third-party custodian, citing disagreements about infidelity.

Attorney Mathis then argued there is no clear and convincing evidence that Defendant violated the conditions of his release. She acknowledged that there is some support that he left the home one time without permission, but after his probation officer explained the conditions, he did not do so again. She asserted that he has tested negative for drugs, was getting his GED, and, when aware that Ms. Neely had filed a charge against him, reported to his officer and did not try to flee. Attorney Mathis requested that the Court modify his conditions to remove Ms. Neely as a third-party custodian and proposed additional available conditions, if the Court found a basis for revocation: adding his mother as a third-party custodian and GPS location monitoring.[3]

The Government responded, arguing that Attorney Mathis's proffer that Defendant contacted her prior to this incident contradicts Ms. Neely's testimony that she discovered Defendant's infidelity just prior to filing the police report. AUSA Poore asserted that Ms. Neely's injuries were both old and new, consistent with her statement to the police that Defendant had been violent previously but inconsistent with testimony attributing the injuries to one altercation with her sister. AUSA Poore argued that no conditions of release will assure the safety of all, stating that Defendant has violent tendencies. She noted his prior charges of burglary and carrying a concealed weapon. Regarding the conditions that Defendant proposed, she argued that Ms. Neely's statement to police shows that Ms. Mahone was not acting as a third-party custodian, as he was drinking and away from her residence. She asserted that Defendant is charged with dealing drugs, there are people coming and going from Ms. Mahone's residence, and drug dealers commonly

---

[3] Attorney Mathis proffered that she spoke to Defendant's probation officer, who indicated that GPS location monitoring is available and common in the Eastern District of Michigan.

conduct transactions within residences. Lastly, AUSA Poore voiced concern that Ms. Neely and Defendant may break a protective order given their relationship, fomenting violence.

Finally, Attorney Mathis agreed that a no-contact order between Defendant and Ms. Neely is appropriate. She countered that there is no proof he is a violent individual, noting that he had been charged with offenses when he was around 19 or 20 years old (when he is now 27 years old) but never convicted.

## IV. ANALYSIS

"A person who has been released under [18 U.S.C. §] 3142 . . . and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). The Government bears the burden of proof, which differs depending on the nature of the alleged violation. *Compare* 18 U.S.C. § 3148(b)(1)(A) (providing probable cause standard), *with* 18 U.S.C. § 3148(b)(1)(B) (providing clear and convincing evidence standard). *See also United States v. Jones*, No. 6:09-16, 2009 WL 1360672, at *2 (E.D. Ky. May 12, 2009) (explaining the standards). After a hearing, the Court shall revoke the defendant's release upon finding (1) either probable cause to believe that the defendant committed another crime while on release or clear and convincing evidence that the defendant has violated any other condition of release and (2) either that "there is no condition or combination of conditions of release that will assure the person will not flee or pose a danger to the safety of any other person or the community" or that "the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b).

Starting with the first inquiry, "[p]robable cause under section 3148(b)(1)(A) requires only that the facts available to the judicial officer warrant a man of reasonable caution in the belief that the defendant has committed a crime while on bail." *United States v. Webb*, No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998) (quoting *United States v. Gotti*, 794 F.2d 773, 777

(2d Cir. 1986)). The Government asserts that Defendant committed a violation of Michigan Compiled Laws § 750.81, assault and battery. The evidence of this crime before the Court is Ms. Neely's report to the police on November 15, 2024 [Exhs. 1–14]. Very little in the record, however, corroborates Ms. Neely's report to police, and Ms. Jasmine Mahone testified that Defendant was in her home the night of November 14, 2024. To support her testimony, Ms. Jasmine Mahone testified that she was awake until the early morning hours of November 15, 2024, and that she woke around 4:00 a.m., and that at no time did her security system notify her of Defendant leaving her home. The Court also has before it the recanting testimony of Ms. Neeley, who stated in a December 2024 letter to defense counsel [Exh. 15] and in her sworn testimony that she lied to the police on November 15.

The Court must assess the credibility of Ms. Neely in making its probable cause determination. In the context of motion for a mistrial, the Court of Appeals has explained that a recanting affidavit or witness must be "viewed with extreme suspicion." *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991), *superseded in part on other grounds by* U.S.S.G. § 2D1.5(a). And "the skepticism with which a court examines [a recanting witness's statement] is only heightened when the recanting witness is a family member and the witness may have feelings of guilt or may be influenced by family members seeking to change the witness's story." *United States v. Coker*, 23 F. App'x 411, 412 (6th Cir. 2001). That principal would apply here, as Ms. Neely and Defendant are engaged, and Ms. Neely testified that she reported to the police because she was upset with him upon learning he was having an affair.

The Court therefore questions the reliability of Ms. Neely's sworn testimony at the revocation hearing recanting her allegations of assault. This suspicion is bolstered by her testimony that she requested that the case of domestic assault against Defendant be dismissed about two days

after the report,[4] yet reported the assault three days later to Defendant's supervising officer. The Court balances its suspicion with the fact that Ms. Neely's statement to police was not sworn and the scant evidence corroborating the account of assault Ms. Neely reported to the police officer on November 15, 2024 (i.e., both old and new marks on Ms. Neely's body depicted by the photographs taken by police and the recorded unsworn statements of Ms. Neely's mother). The Court also considers the testimony of Ms. Jasmine Mahone—albeit with caution because she also has a personal interest in seeing that Defendant returns to her home—who said Defendant did not leave her home on the night of November 14, 2024. The Court further considers that Defendant questioned how to remove Ms. Neely as his third-party custodian weeks before the alleged assault along with Ms. Neely's testimony and Ms. Jasmine Mahone's testimony that Ms. Neely would threaten to call Defendant's supervising officer when they argued. Finally, the Court notes Ms. Neely's immature demeanor exhibited during her testimony.

Considering all of this, the facts available to the Court give the Court enough doubt about whether Defendant committed a violation of Michigan Complied Laws § 750.81 to preclude a finding of probable cause.[5] In other words, "the facts available to the judicial officer [would not]

---

[4] Upon inquiry from the Court, the Government stated that it did not have any information about whether the charges in Michigan had in fact been dismissed.

[5] In its motion, the Government states that "[s]ince there is probable cause to believe that, while on release, [Defendant] committed a new crime, a rebuttable presumption arises against [Defendant] that no conditions or combination of conditions will assure that he will not pose a danger to the safety of any person to the community" [Doc. 41 p. 4]. Under 18 U.S.C. § 3148(b), the Court applies such a presumption only upon finding probable cause to believe that the defendant committed a felony. Michigan law classifies violations of § 750.81 as a misdemeanor unless the individual has twice previously been convicted of the offense. Mich. Comp. Laws. § 750.81 (2024). The Court has no evidence that Defendant has previously been convicted of this crime. Thus, even if there is probable to believe that Defendant committed a violation of § 750.81 while on release, such a presumption would not apply.

warrant a man of reasonable caution in the belief that the defendant has committed a crime while on bail." *Webb*, 1998 WL 381686, at *1.

That brings the Court to whether there is clear and convincing evidence that Defendant "violated any other condition of release." 18 U.S.C. § 3148(b)(1)(B). The Government alleges that Defendant violated conditions 3, 7(l), and 7(p)(ii) [Doc. 41 p. 4]. Condition 3 requires Defendant to advise his supervising officer in writing before making any change of residence or telephone number; Condition 7(l) requires Defendant to not use alcohol excessively; and Condition 7(p)(ii) requires Defendant to remain on home detention [Doc. 30]. The information before the Court does not demonstrate by clear and convincing evidence that Defendant violated any of these conditions.

Turning to the second inquiry, and assuming there is probable cause to believe Defendant committed a violation of § 750.81, the Court must consider whether there are conditions of release that would assure the safety of the community and that Defendant will not flee and whether Defendant is unlikely to abide by conditions of release. 18 U.S.C. § 3148(b)(2)(A)–(B). In evaluating the first inquiry, the Court must consider the factors set forth in § 3142(g). 18 U.S.C. § 3148(b)(2)(A). At Defendant's detention hearing, the Court considered the § 3141(g) factors and found by clear and convincing evidence that Defendant presents a danger to the safety of any other person and the community. The Court incorporates that analysis here and does not deviate from that conclusion after considering the information presented at the revocation hearing.

The Court also found that there were conditions available to mitigate that danger, which also now includes potential for violence and alcohol abuse. Defendant proposes even more restrictive conditions than those previously imposed by the Court, including that the Court remove Ms. Neely as his third-party custodian and order that he have no contact with her. Defendant also proposed a substitute secondary third-party custodian, his mother, and that he be placed on location monitoring, specifically GPS monitoring.

12

Case 3:24-cr-00079-KAC-JEM    Document 54    Filed 02/05/25    Page 12 of 14
PageID #: 199

While the Court will not designate Defendant's mother as a third-party custodian, the Court finds that removal of Ms. Neely as a third-party custodian and the condition that Defendant have no contact with her will assure the safety of Ms. Neely and the community. In addition, to assure the safety of the community, the Court will impose the condition that Defendant refrain from all alcohol use, the condition that Defendant be placed on GPS location monitoring, and the condition that Defendant participate in a mental health assessment. 18 U.S.C. § 3148(b) (explaining that the Court may modify conditions of release); *see also* 18 U.S.C. § 3142(c)(3) (providing for amendment of a release order "at any time" "to impose additional or different conditions of release").

Further, the Court does not find that Defendant is unlikely to abide by his conditions of release. Even considering the allegations in Ms. Neely's police report, Defendant has actively attended his GED program, tested negative on drug screenings, and otherwise complied with the conditions of his home detention.[6] Also, after his supervising officer explained that he needed to seek prior permission to leave his residence, even for trips to the store, Defendant demonstrated his compliance with this instruction when he planned to join his sister on an outing to fix her tire. Finally, Officer Walker reported that she had received no reports of noncompliance.

---

[6] At the hearing, it was discussed that Defendant would visit with individuals in vehicles outside of the residence. Attorney Mathis explained that Defendant's supervising officer in Michigan informed Defendant that he could be in the driveway of the residence. GPS location monitoring will assure whether Defendant remains in compliance with his condition of home detention in accordance with the instructions of his supervision.

## V. CONCLUSION

Accordingly, the Government's Motion to Revoke Bond is **DENIED [Doc. 41]**, and the Defendant shall be released pursuant to an Amended Order Setting Conditions of Release, which is being entered contemporaneously with this Memorandum and Order.

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge